Date signed June 23, 2009



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| BRIAN WHITE and MARLENE WHITE, | * | Case No. 08-26688-JS |
| | * | |
| Debtors | | Chapter 13 |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### *MEMORANDUM OPINION DENYING CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN WITH LEAVE TO AMEND*

Before the Court is the confirmation of the Chapter 13 plan proposed by the debtors, Brian and Marlene White, and the objections filed by eCAST Settlement Corporation ("eCAST") and Ellen Cosby, the Chapter 13 trustee ("the trustee"). For the reasons stated, confirmation of the plan will be denied, with leave to amend.

### *FINDINGS OF FACT*

1. On December 16, 2008, Brian and Marlene White (collectively, "the Whites" or "the debtors") filed a Chapter 13 bankruptcy petition in this Court.

2. On February 19, 2009, the Whites filed amended Schedules I and J, that disclosed current gross monthly income of $16,666.55, net monthly income of $11,465.27, and average monthly expenses of $10,692.33.

3. On March 20, 2009, the Whites filed an amended Form B22C, which disclosed gross monthly income of $15,917.40. The form also showed monthly expense deductions under the standards of the Internal Revenue Service that totaled $8,081.50, additional living expense deductions of $899.91, and monthly expense deductions for payment of secured debt of $10,138.32.

4. On the petition date, the Whites owed monthly payments for secured debt on seven different loans. On their principal residence, they were obligated to make two monthly payments to Indymac Bank, a first mortgage payment in the amount of $4,753.11, and a second mortgage payment in the amount of $389.34. As to a property in New Jersey, the Whites paid $3,100 per month to Chevy Chase Bank and $300 per month to Wachovia. As to a property in Tennessee, the Whites owed a monthly payment of $740 to Wells Fargo. They were also obligated to make two monthly car payments that totaled $617.50.

5. The debtors' Chapter 13 plan proposed to surrender the New Jersey and Tennessee properties. The plan also proposed that payments first be applied to a

$2,000 attorney fee balance, and then to pay to Indymac Bank $8,459.42 in arrears, simultaneously with payments to unsecured creditors.

6. The debtors calculated the appropriate monthly plan payment to be $740, by subtracting the monthly expenses in Schedule J from the monthly income in Schedule I.

7. Schedule F listed $109,920 of unsecured debt, which appears to be almost exclusively credit card debt. Unsecured creditors have filed proofs of claim totaling $111,340. eCAST, the assignee of Bank of America, is the holder of $40,268.68 of that unsecured debt.

8. On February 2, 2009, the trustee filed an objection to the plan and argued that the debtors should be paying $915 a month. She agrees with the debtors that the proper method of determining the amount of the monthly plan payment is to subtract the monthly expenses in Schedule J from the monthly income in Schedule I. However, she objects to the amounts that the debtors have allocated to cell phone payments, utilities, cable television and similar small expenses.

9. On March 30, 2009, eCAST also objected to the plan because the debtors were not devoting all of their projected disposable income to the plan. eCAST asserted that the debtors should use the $16,666.65 monthly income from their Schedule I, instead of the $15,917.40 from their form B22C, in order to determine the

monthly income component of projected monthly income.  eCAST also argued that the debtors improperly included the $4,140 in monthly payments owed on the debt secured by the properties they are surrendering and that the amount of the monthly plan payment should be $1,726.92.  eCAST arrived at this amount by subtracting the expenses on Form B22C from the income on Schedule I and adding back in the $4,140 in monthly payments for the surrendered properties.

     10.  On April 8, 2009, a hearing was held on the confirmation of the plan.  The Court took the matter under advisement, and invited the parties to submit briefs, and all have done so.

## *CONCLUSIONS OF LAW*

     1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is appropriate pursuant to 28 U.S.C. § 1409.

     2.  Section 1325(b)(1) of the Bankruptcy Code requires that, if a trustee or unsecured creditor objects to a plan, the plan must either pay the unsecured creditor in full or provide that all of the "debtor's projected *disposable income* to be received in the applicable commitment period" be devoted to paying unsecured creditors under the plan.  11 U.S.C. § 1325(b)(1) (emphasis added).

3. Section 1325(b)(2) provides, in pertinent part, that "the term 'disposable income' means *current monthly income* received by the debtor... less amounts reasonably necessary to be expended - (A)(i) for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2) (emphasis added).

4. "Current monthly income," as defined by 11 U.S.C. § 101(10A), "means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the six-month period ending on... the last day of the calendar month immediately preceding the date of the commencement of the case." 11 U.S.C. § 101(10A).

5. The question of how to calculate "projected disposable income" has divided the courts. The word "projected" favors the use of Schedule I, which is a forward-looking projection of the debtors' income. However, the statutory definitions of "disposable income" and "current monthly income" look to the static six-month period immediately before the bankruptcy filing. The use of these terms favors the Court's use of Form B22C, which asks for the debtors' "current monthly income," as it is defined by 11 U.S.C. § 101(10A).

6. In his opinion in the case of *In re Watson*, 366 B.R. 523 (Bankr. D. Md. 2007), Chief Judge Keir of this Court stated:

> ..."[D]isposable income" as calculated on Form B22C is the presumptive "projected disposable income" for application of Section 1325(b)(1)(B). However, by evidence a party may demonstrate "a substantial change in circumstance such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future"...

366 B.R. at 531 (*quoting In re Jass*, 340 B.R. 411, 419 (Bankr. D. Utah 2006) (holding "only in rare instances will the Court consider confirming chapter 13 plans where the 'projected disposable income' does not conform with the calculations on Form B22C"). Judge Keir went on to hold that "if the presumption is rebutted, a projected budget based upon the evidence, reflecting projected earnings and projected reasonable necessary expenses will govern the determination of 'projected disposable income' for purposes of confirmation of the plan." *Id.*

7. The holdings in *Watson* and *Jass* have been concurred with by the majority of appellate courts that have determined this issue. *See Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269, 1282 (10th Cir. 2008) ("the starting point for calculating a Chapter 13 debtor's 'projected disposable income' is presumed to be the debtor's 'current monthly income' as defined in 11 U.S.C. § 101(10A)(A)(i), subject to a showing of a substantial change in circumstances"); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008) ("Accordingly, we adopt the view shared by many bankruptcy courts that a debtor's 'disposable income' calculation on Form

22C is a starting point for determining the debtor's 'projected disposable income,' but that the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses as reported on Schedules I and J"); *Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302 (BAP 1st Cir. 2007) (*per curiam*) (Form B22C controls when "substantially the same" as actual current income, but actual current income controls when there is a large difference); *but see Maney v. Kagenveama (In re Kagenveama),* 541 F.3d 868, 874 (9th Cir. 2007) (disallowing deviation from Form B22C); *Hildebrand v. Petro (In re Petro)*, 395 B.R. 369, 377-78 (BAP 6th Cir. 2008) (calculation should be based exclusively not on Form B22C or Schedules I and J but on ability to pay at time of plan confirmation).  Accordingly, the viability of the holding in *Watson* is unquestioned.

    8. The evidence does not justify a deviation from Form B22C. *Watson* requires that the party proposing a deviation from the form must present evidence that a change in circumstances prevents Form B22C from accurately predicting monthly income. In the instant case, the only evidence presented by eCAST is the debtors' Amended Schedule I, which shows monthly income of $16,670.65, an increase of $789.25, or 4.95%, over the $15,917.40 provided by the debtors in Form B22C.

9. By itself, the debtors' Amended Schedule I does not support a deviation from Form B22C. Because Form B22C and Schedule I use different metrics, the respective calculations of monthly income will almost always differ, sometimes significantly. For instance, when a debtor owns a small business, or when a debtor receives a different number of paychecks each month, Form B22C is inherently unreliable. Cases that support a deviation from Form B22C uniformly require more than a mere difference between the forms. *See, e.g., Kibbe* (deviation required when debtor obtained higher paying job shortly before filing bankruptcy); *Lanning*, 545 F.3d at 1271(deviation required when debtor received buyout in six months before bankruptcy, causing large increase in statutorily defined "current monthly income"); *In re Heath*, 371 B.R. 806, 809 (Bankr. E.D. Mich. 2007) (same); *In re Grady,* 343 B.R. 747, 750 (Bankr. N.D. Ga. 2006) (reduction in income caused by heart condition sufficed to justify deviation from Form B22C); *see also Frederickson* at 659 ("These changes could be the result of, *inter alia*, a promotion at work, the loss of a job, the acquiring of a second job, or increased medical expenses"). In the instant case, without knowing more about the cause of the difference, this Court will not require a greater income base than that which is provided for in the debtors' plan.

10. However, the Court agrees with eCAST that it is inappropriate for the debtors to include the amount of monthly payments due on the surrendered properties

in their calculation of monthly expenses. They included the $3,400 figure that represented the monthly mortgage payment on their New Jersey property and $740 in monthly mortgage payments on their Tennessee property, even though they will not be making those payments during the life of their plan. The Court finds the inclusion of these expenses to be improper under the circumstances.

11. Section 1325(b)(2) provides that current monthly income must be reduced by amounts "reasonably necessary to be expended... for the maintenance or support of the debtor or a dependant of the debtor..." in order to arrive at a proper "projected disposable income." 11 U.S.C. § 1325(b)(2). Section 1325(b)(3) provides that for above-median income debtors, the "amounts reasonably necessary to be expended" shall be determined in accordance with 11 U.S.C. § 707(b)(2). 11 U.S.C. § 1325(b)(3). The debtors have annual income greater than $190,000, which exceeds the median Maryland income for a family of six of $113,684.[1]

12. Section 707(b)(2)(A)(iii) allows the deduction of "[t]he debtor's average monthly payments on account of secured debts." Those payments "shall be calculated as the sum of (I) the total of all amounts scheduled as contractually due to secured

---

[1] Applicable median incomes are periodically updated. For cases filed between October 1, 2008 and March 14, 2009, inclusive, $113,684 is the appropriate median income. For cases filed on March 15, 2009 or thereafter, the median income is $117,519.

9

creditors in each month of the 60 months following the date of the petition; and (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts..." 11 U.S.C. § 707(b)(2)(A)(iii).

13. In the context of a Chapter 7 case, this Court (Mannes, J.) has held that payments due to secured creditors may be deducted under Section 707(b)(2)(A)(iii), even when the debtors surrender property that secures the debt and when they discontinue making the payment. *See McDow v. Daniels-Brown (In re Daniels-Brown)*, 08-11121-PM (Bankr. D. Md. Sept. 23, 2008), 2008 WL 4379152 at *2 (stating that Congress enacted "a 'mechanical' formula for presuming abuse" and payments on surrendered secured property were properly included in expenses under that test.).[2]

---

[2] The *Daniels-Brown* opinion followed the majority of courts that have applied the plain meaning of Section 707(b)(2)(A)(iii)(I) and allowed such a deduction in a Chapter 7 case. *See Daniels-Brown*, 2008 WL 4379152 at *2 n. 4 (collecting cases in support of deduction in Chapter 7 case), *2 n. 5 (collecting cases for proposition that deduction is inappropriate).

14. The question then remains whether or not the deduction is allowable in a Chapter 13 plan.[3]

---

[3]This question has led to a stark division among the Courts. The following is a small sample of the diverse opinions on this issue. *See, e.g. In re Spurgeon*, 378 B.R. 197, 202 (Bankr. E.D. Tenn. 2007) (disallowing deduction because secured debt was no longer contractually due); *In re Love*, 350 B.R. 611, 614-15 (Bankr. M.D. Ala. 2006) (disallowing deduction because "projected disposable income" contemplated a forward-looking test); *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007) ("statutory equation precludes the inclusion of any expenditure that Debtors in fact do not actually need for the post-confirmation support and maintenance of their family under the plan they are proposing"); *In re Rahman*, 400 B.R. 362, 369 (Bankr. E.D. N.Y. 2009) (use of terms "projected" and "to be received" implies a forward-looking approach); *In re Long*, 390 B.R. 581, 589 (Bankr. E.D. Tex. 2008) (use of term "in accordance with" mandates that the Court not allow deduction); *In re Coleman*, 382 B.R. 759, 763 (Bankr. W.D. Ark. 2008) ("Although the information required for the respective means tests is the same, the chapter 13 means test requires additional adjustments according to § 1325(b)(2)(A)(i); specifically, that the 'amounts reasonably necessary to be expended' (as determined by § 707(b)(2) and the chapter 13 means test) must reflect payments that first become payable after the date the petition is filed, which is the third component."); *In re Van Bodegom Smith*, 383 B.R. 441, 450 (Bankr. E.D. Wis. 2008) ("scheduled as contractually due" means due under the Chapter 13 plan); *In re Hoss*, 392 B.R. 463, 471-72 (Bankr. D. Kan. 2008) (in order to effectuate purpose of Congress, Court would not allow debtor to deduct full car payment when debtor's plan proposed to bifurcate car lender's secured claim pursuant to 11 U.S.C. § 506); *In re McPherson*, 350 B.R. 38, 48 (Bankr. W.D. Va. 2006) (same); *but see In re Thomas,* 395 B.R. 914 (BAP 6th Cir. 2008) ("the means test is a mechanical, formulaic approach that as applied is no different in chapter 7 than it is in chapter 13"); *In re Quigley,* 391 B.R. 294 (Bankr. N.D. W.Va. 2008) (disputing all arguments against deduction and finding that deduction is not absurd but rather "a natural consequence of the application of a rigid set of rules, specifically chosen to advance the application of objective criteria over a judicially based case by case determination"); *In re Turner,* 384 B.R. 537, 542 (Bankr. S.D. Ind. 2008) ("If Congress intended for the expense deduction allowed under § 707(b)(2)(A)(iii) to be conditioned on continued payment of the expense, it presumably knew how to draft

15. This Court holds that although monthly payments on surrendered secured property may be properly deducted in order to determine eligibility for discharge under the Chapter 7 means test, they are not properly deductible in calculating expenses to determine a Chapter 13 debtor's projected disposable income.

16. While Section 1325 uses the identical test to determine disposable income in Chapter 13 cases as does Section 707 to determine allowable deductions for the purpose of the Chapter 7 means test, as *Watson* held, the disposable income as calculated on Form B22C is only "the presumptive 'projected disposable income' for application of Section 1325(b)(1)(B)." *Watson*, 366 B.R. at 531. Evidence of "a

---

such a provision"); *In re Burmeister*, 378 B.R. 227, 230 (Bankr. N.D. Ill. 2007) (The phrase "contractually due" in section 707(b)(2)(A)(iii)(I) means a legal obligation under a contract, an obligation the debtor owes. It makes no difference whether the debtor has actually been paying the obligation or intends to keep paying it) (internal citations omitted); *In re Ries*, 377 B.R. 777, 783-84 (Bankr. D. N.H. 2007) ("the statutory text applies equally to debtors under chapter 13 because Congress has directed the bankruptcy courts to use the same methodology to compute the Disposable Income for above median debtors in both chapter 7 and chapter 13 proceedings"). *In re Anderson,* 383 B.R. 699, 708 (Bankr. S.D. Ohio 2008) (finding allowance to be deductible); *In re Dionne*, 402 B.R. 883 (Bankr. E.D. Wis. 2009) ("the determination is the same in Chapter 13 and Chapter 7, because the Code requires application of § 707(b)(2)(A)(iii) in both Chapters, and that provision directs the court to examine whether a debtor has scheduled payments as of the date of the petition"); *cf. In re Marchionna*, 393 B.R. 512, 521 (Bankr. N.D. Ohio 2008) (deduction was inappropriate when motion to lift stay had been granted prior to confirmation of plan because payments were no longer "contractually due").

substantial change in circumstance such that the numbers contained in Form B22C are not commensurate with a fair projection of a debtor's budget in the future" will rebut the presumptive correctness of Form B22C. *Id.* "The use of 'projected' to describe 'disposable income' allows this method of determining the deductible expense." *Spurgeon*, 378 B.R. at 202 (*citing In re Meek*, 370 B.R. 294 (Bankr. D. Idaho 2007)).

17. Accordingly, the Court finds that the $4,140 reduction in payments that the debtors are required to tender to secured creditors merits a deviation from Form B22C. To hold otherwise would mean that the debtors had negative "projected disposable income" and it would not be necessary to make any payments to unsecured creditors. This the Court declines to permit.

18. After subtracting $4,140 from the expenses included on the debtors' Form B22C, the Court has calculated that the debtors have $937.67 in projected disposable income. This is slightly more than the trustee's proposed plan payment of $915, to which the debtors consented at the hearing. The Court is aware that other disputes exist as to certain deductions taken by the debtors, and is hopeful that those disputes will be resolved by the time of the next confirmation hearing.

WHEREFORE, confirmation of the debtors' First Amended Plan will be DENIED WITH LEAVE TO FILE AN AMENDED PLAN WITHIN 15 DAYS FROM DATE HEREOF.

*ORDER ACCORDINGLY*.

cc: Jeffrey M. Sirody, Esquire
Sirody, Freiman & Feldman
1777 Reisterstown Road
Suite 360 E
Baltimore, Maryland  21208
Attorney for the Debtors

Jeffrey L. Friedman, Esquire
Friedman and Associates
100 Owings Court, Suite 4
Reisterstown, Maryland  21136
Attorney for eCAST Settlement Corp.

R. Martin Caskey, Esquire
Office of Ellen W. Cosby, Chapter 13 Trustee
P. O. Box 20016
Baltimore, Maryland  21284-0016
Attorney for the Chapter 13 Trustee

Office of the U.S. Trustee
2625 U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland  21201